The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 5, 2026

**No. A-1-CA-42851**

**LABOR RELATIONS BOARD OF THE NEW MEXICO DEPARTMENT OF WORKFORCE SOLUTIONS,**

Plaintiff-Appellee,

v.

**EVOLV STRONG, LLC,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Victor S. Lopez, District Court Judge**

N.M. Department of Workforce Solutions
Office of General Counsel
Rachael Rembold
Albuquerque, NM

for Appellee

Santillanes & Neidhardt P.C.
Janet Santillanes
Olivia Neidhardt
Albuquerque, NM

for Appellant

## OPINION

**WRAY, Judge.**

{1}    Plaintiff, the Labor Relations Division of the New Mexico Department of Workforce Solutions (the Department), brought an action against Defendant eVOLV Strong, LLC (Evolv) for violations of the Healthy Workplaces Act (HWA), NMSA 1978, §§ 50-17-1 to -12 (2021). Evolv appeals the district court's grant of summary judgment in favor of the Department and denial of summary judgment to Evolv. We conclude that (1) Evolv was entitled to summary judgment that it did not violate Section 50-17-3(F) by imposing conditions on the use of earned sick leave; and (2) disputed issues of material fact remain about whether Evolv took adverse action against an employee who exercised her rights under the HWA. *See* § 50-17-8(A)(2). We reverse.

## BACKGROUND

{2}    A part-time fitness instructor (Employee) for Evolv was scheduled to teach three classes on July 7, 2023, starting at 6:00 in the morning. On July 6, 2023, at 5:51 p.m., Employee emailed the owner of Evolv (Owner), Evolv's accounting email address, and the payroll manager and requested pay for three hours of earned sick leave for the 6:00 a.m., 7:00 a.m., and 11:00 a.m. classes that were scheduled for July 7, 2023. Employee did not search for a substitute instructor. The Department provided evidence that even though the payroll manager confirmed that Employee

would be paid for the sick leave and that she was paid, Evolv also designated each hour of that sick leave as "no-call no-show," which counted against Employee on her employment record.

{3} On July 17, 2023, Employee posted on Evolv's WhatsApp group for a substitute instructor for her 6:00 a.m. class the next day and later again emailed the payroll manager to receive sick leave. She was paid for her sick leave, but the Department again provided evidence that the absence was counted as "no-call no-show." On July 18, 2023, Evolv emailed Employee and informed her that Owner would find coverage for all of her future sessions, because her failure to find a substitute for the classes and/or failure to inform management of the need to cancel the classes "left [Evolv] in a bind" and constituted a "No Call No Show."

{4} Employee reported her removal from the schedule to the Department and made a claim for violations of the HWA. *See* § 50-17-9(B)(1), (4) (regarding complaints to the Department). The Department investigated the claim, determined that Evolv had violated the HWA, and assessed damages against Evolv. *See* § 50-17-9(B)(2) (regarding investigating complaints); § 50-17-11 (addressing employer liability for HWA violations). The Department filed suit after giving notice to Evolv that action would be taken unless the damages were paid. *See* § 50-17-10(A) (governing civil actions). The Department alleged that Employee was unlawfully terminated in violation of Section 50-17-3(F), which prohibits an employer from

requiring an employee to search for and find a replacement worker in order to take earned sick leave, and Section 50-17-8(A), which prevents an employer from retaliating against an employee for exercising their rights under the HWA.

{5} The parties filed cross-motions for summary judgment. The district court considered only the Department's motion at the hearing but in its written order indicated that it had reviewed both motions. After granting the Department's motion and denying both Evolv's motion and motion to reconsider, the district court entered judgment for the Department and damages against Evolv.

**DISCUSSION**

{6} We review the district court's grant of summary judgment de novo. *See Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law" and "[w]here reasonable minds will not differ as to an issue of material fact" even though "[a]ll reasonable inferences are construed in favor of the non[]moving party." *Id.* (internal quotation marks and citation omitted). Evolv argues that the undisputed material facts showed (1) no violation of Section 50-17-3(F) because the approval of Employee's earned sick leave was not conditioned on looking for or finding a replacement (the conditions claim); and (2) no retaliatory action was taken against Employee in response to exercising her rights under the HWA (the retaliation claim).

We conclude that Evolv was entitled to summary judgment on the conditions claim but that genuine issues of material fact remain regarding the retaliation claim, which preclude summary judgment. We consider these claims in turn.

**I.      The Conditions Claim and Section 50-17-3(F)**

{7}      The conditions claim is based on Section 50-17-3(F), which prohibits employers from requiring employees to "search for or find a replacement worker to cover the hours during which the employee is using earned sick leave" as a condition for taking earned sick leave. The Department asserts that Evolv violated Section 50-17-3(F) because even though Evolv undisputedly paid the earned sick leave for both July 7 and July 18, the evidence showed that Employee was designated as "no-call no-show," in part because Employee "sent an email without requesting a replacement worker for her classes." According to the Department, this practice amounts to requiring employees to find a replacement worker in order to be paid for earned sick leave. Evolv responds that even though Employee found no replacement instructor, she was permitted to take earned sick leave and she was paid for that time—therefore, no conditions were placed on taking the sick leave. We agree with Evolv.

{8}      The undisputed evidence demonstrates that Evolv approved Employee's sick leave request and paid her even though she had not searched for a replacement. Although Employee's leave was designated as "no-call no-show," she was still paid

and allowed to take the earned sick leave requested, so *taking* the leave and being paid for it was not conditioned on searching for or finding a replacement worker. The plain language of Section 50-17-3(F) does not require an employer to do more. *See Jones v. City of Albuquerque Police Dep't*, 2020-NMSC-013, ¶¶ 47-49, 470 P.3d 252 (reversing a district court's ruling on cross-motions for summary judgment when application of the facts to the plain language of the relevant statute did not support summary judgment for the appellee). As a result, Evolv was entitled to summary judgment on the Department's claim that Evolv violated Section 50-17-3(F). We reverse the district court's grant of the Department's motion and denial of summary judgment to Evolv as to Section 50-17-3(F).

## II. The Retaliation Claim and Section 50-17-8

{9}     The Department's second claim arises from Section 50-17-8(A) and (C), which prohibit retaliation. Section 50-17-8(A) states in relevant part that "[a]n employer shall not take or threaten any adverse action whatsoever against an employee[] (1) that is reasonably likely to deter such employee from exercising or attempting to exercise a right granted pursuant to the [HWA]; or (2) because the employee . . . has exercised or attempted to exercise such rights." Section 50-17-8(C) requires that "[a]n employer shall not count use of sick leave in a way that will lead to discipline, discharge, demotion, non[]promotion, less favorable scheduling, reduction of hours, suspension or any other adverse action." The HWA provides that

"[w]hen the use of earned sick leave is not foreseeable, the employee shall notify the employer orally or in writing as soon as practicable." Section 50-17-3(E).

{10}    To establish a retaliation claim, the HWA sets forth the following burdens:

> (1)    when an employee presents a prima facie showing of retaliation, the employer shall then have the burden to establish a legitimate, non[]retaliatory reason for the adverse employment action; and
>
> (2)    when an employer meets the burden of proof required by Paragraph (1) of this subsection, the employee shall then have the burden to establish that the reason cited by the employer was pretextual.

Section 50-17-10(E). The Department asserts that Evolv retaliated against Employee when it discharged her after using earned sick leave twice in a two-week period. Evolv responds that Employee's discharge was not the result of taking sick leave without finding a replacement, but rather was based on a legitimate nondiscriminatory reason, because of Employee's failure to find a replacement worker *or* properly notify management in time to cancel her classes as required by established company procedures that Employee had followed for years before the absences at issue. The Department contends that Evolv's asserted basis is pretextual, because the HWA limits the notice employers may require for employees to use earned sick leave and regardless, Employee provided sufficient notice. As we explain, we agree that the undisputed material facts establish a prima facie case for retaliation, but disputed facts remain about whether Evolv's nonretaliatory reason was legitimate or pretextual.

{11}    The Department presented undisputed evidence that Evolv took Employee off the schedule after she used earned sick leave to miss four classes and did not find a replacement instructor. On July 6, 2023, Employee emailed Evolv's accounting email and Owner's personal (and not business) email address to use earned sick leave for three classes scheduled for the next day. On July 17, 2023, Employee sent a message to Evolv's WhatsApp group, which included Owner, asking for a replacement for her 6:00 a.m. class the following morning and followed up with the payroll management email to request an hour of her paid sick leave to cover her class on July 18th at 6:00 a.m. Even though Employee provided notice of her request to use sick leave in advance of her scheduled classes, Evolv counted her absences as "no-call no-show" for each of the four classes she missed, and ultimately terminated Employee after her fourth absence. This undisputed evidence establishes a prima facie showing of retaliation because Employee gave notice that she would be using earned sick leave but her absences were counted against her and used as a basis to permanently take her off the schedule.

{12}    In response, Evolv maintains that it provided evidence to show that Employee was taken off the schedule for a legitimate, nonretaliatory reason. *See* § 50-17-10(E) (requiring an employer to rebut a prima facie case that shows retaliation). Evolv claims that Employee was removed from the schedule "because she violated [a] long-standing job requirement, leaving Evolv in a bind." For support, Evolv points

to an affidavit (the Affidavit) from Owner, provided in response to the Department's summary judgment motion, which explains that when an instructor is unable to show up for work, Evolv's policy was for the employee to provide "proper notification to Evolv management" (notice policy). The Affidavit does not define "proper notification," but Owner stated that

> [f]or years before July 2023, when . . . Employee here could not teach her scheduled classes, she had followed the proper channels to either find a replacement for her classes by posting on WhatsApp, or by notifying Evolv management, by telephone call or text, that her classes needed to be cancelled."

Evolv argues that Employee did not abide by the notice policy twice in a short period of time, and therefore, she was taken off the schedule, which Evolv maintains was both nondiscriminatory and justifiable because Employee's actions "disrupt[ed] Evolv's business and inconvenience[d] its members." The Department contends that Evolv's asserted basis was pretext, because the notice policy is contrary to the HWA, and the undisputed material facts demonstrated that Employee provided sufficient notice to permit Evolv to cancel the classes. We disagree with both of the Department's arguments.

{13}     Evolv's notice policy was not inconsistent with the HWA. According to the Affidavit, the notice policy required either posting to the WhatsApp group or notifying management by call or text. The Department argues that Evolv's notice policy required Employee to find a replacement worker, contrary to Section 50-17-

3(F), and that the HWA provides the "sole requirements" for notice. To the contrary, however, the notice policy does not require an employee to find a replacement. While posting to the WhatsApp group could have the result of a replacement volunteering to take the shift, the notice policy only requires the posting, and not a successful posting, to provide notice that sick leave will be used.[1] The notice policy is further in line with the HWA's requirement that employees using sick leave "shall notify the employer orally or in writing as soon as practicable." Section 50-17-3(E). The notice policy specifies ways of providing notice "orally"—by call—or "in writing"—by text or posting to the WhatsApp group—but nothing in the HWA prohibits an employer from requiring employees to comply with the statutory requirements in certain ways that would allow an employer to find a replacement worker. The notice policy permits notice either orally or in writing and does not provide a more limited timeframe than Section 50-17-3(E). As a result, the notice policy is not contrary to law. The remaining question therefore is whether any noncompliance by Employee with Evolv's notice policy establishes a legitimate nondiscriminatory reason to take her off the schedule or whether Evolv's reliance

---

[1]Evolv described the policy slightly differently in another part of the record and indicated that employees were required to post to the WhatsApp group and then, if no other employee agreed to take the class, by calling or texting. Evolv does not rely on this policy on appeal, and so we do not consider whether this iteration of the policy violates the HWA.

on the notice policy was pretext to take Employee off the schedule for her use of earned sick leave.

{14}     On this front, a genuine dispute of material fact exists. Evolv provided evidence to support its position that because Employee did not comply with the notice policy on two occasions in a short period of time, Evolv did not find replacement instructors and classes had to be cancelled. The Department provided evidence that Evolv's reason is pretext for Employee's use of earned sick leave, because Employee provided sufficient notice for Evolv to have been able to cancel the classes in a timely fashion and avoid disruption to the business. It is for the fact-finder to resolve this dispute. Accordingly, summary judgment was not warranted.

**CONCLUSION**

{15}     We reverse and remand for trial on the Department's retaliation claim.

{16}     **IT IS SO ORDERED.**


_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____
**MEGAN P. DUFFY, Judge**


_____
**GERALD E. BACA, Judge**